Our next case this morning is GodFREY v. TRANSPORTATION When you're ready, Mr. Lipton. Thank you. May it please the Court, I am Roger Lipton, and I'm representing the appellant Yuan Godfrey. This is a case that has been in this Court before, and this Court issued a mandate remanding an issue that the Merit Systems Protection Board had dismissed as a result of the mandate. A hearing was held over the course of two days, and the Board found that there was not a USARA violation in that the appellant, who is a member of the Naval Reserves, had not been removed from her service with the FAA because of her military service. We submit that under the due process holding in Withrow v. Larkin, that it was a mistake for the Board to so find, because the direct supervisor of Ms. Godfrey, a woman proposed and decided her removal when, in fact, that supervisor, Ms. Havens, was the target of criticism and the target of a claim of hostile work environment that Ms. Godfrey had asserted. So under Withrow, the standard is if there's a probability of actual bias in the one who's serving in all three of those functions, that's too high for the constitutional due process standard, and if, in fact, a removal is a result of that person, the Constitution is violated, and that's what we have here. How do you deal with the DiSarno case, the early case from this Court that said there's no procedural error in having the removing person and the investigating person being the same? I would distinguish that because in DiSarno, that person was not the target of the type of criticism that we have in this case. In other words, although there was familiarity, which was the complaint there that the deciding official was familiar with the facts in the first place that, in theory, that bias carried over when they were making the ultimate decision, what we have later on here is, to those two facts, the criticisms that were lodged by Ms. Godfrey. Now, what were those criticisms? They consisted of—let me digress briefly. Ms. Godfrey has been at odds with the FAA going back to 2003. I have a chart that's goes through the nine-year history, but things heated up again in 2008 when Ms. Godfrey returned from her military service, and she was gone in July of that year for about three weeks. Mr. Lipton, you kind of focused in on the sense that Havens may have been biased, but didn't the board in this instance determine that Havens did not demean or in any way carry improper feelings towards Ms. Godfrey? Yes, the board did find that, but to answer the prior question and then catch up to this last question, two of them had a meeting within seven days of when Ms. Godfrey returned in July of that year, 2008. The topic of the meeting was, how could Ms. Godfrey catch up from the backlog of 241 cases that had accumulated when she was at the military service? So, it's a topic that directly relates to the military service. Godfrey documents the meeting in an email characterizing Havens' actions towards her words as demeaning, and then to cap off the meeting, Godfrey claims that Havens obstructs her from leaving her office with her arm, physically obstructs her. Granted, Havens denied that at the hearing. Well, and there's a finding on the record that that was a misinterpretation by Godfrey, that in fact it was just a misunderstanding. He was reaching for a door, not blocking her. I saw that, but does that create, but the criticism is there, Your Honor. Does that then create the probability of actual bias? Understood there's two versions to every story, assuming Havens is 100 percent right in her version, which the board found, but does the probability of bias then come into it? Well, but see, we have to deal with one story. We have to deal with the facts as they're presented to us by the board, and that shows no threatening, no demeaning behavior by Havens against Godfrey, which seems to put this case back in the disarmal category, which says there's no procedural error, and therefore could be no due process error either. Well, then if I could ask the court to hear an additional item that was in the record that apparently the board overlooked, because Godfrey then asked to be reassigned, and the reassignment, she said, was the result of a hostile work environment that has been created through the combination of appeals that were pending, or an appeal that was pending to this board, plus her military service. She requests to be reassigned. Havens' direct line supervisor, a woman named Ms. Perkins, in a memo that's, is in evidence and is in the brief at, I'll find it in a second, but the Perkins memo is significant because it goes beyond even the claim that Ms. Godfrey was making through reassignment because of this hostile environment. The Perkins memo says you're trying to create a situation where you're saying your military service prevents you from catching up on the work, and further it Where are you going with this? I'm confused. What is it you're trying to say? You understand we operate at this level on a very limited standard of review. Understood. We can't review the facts. Understood. There's no substantial evidence in the record to support them, and the board, you brought all that to the board. The board made factual findings about all of those issues. Where did the board err? That's the question. Well, the companion claim that we've briefed for the board is that for unknown reasons, apparently, the documents, there were three appeals that were joined, that were heard in January of 2010. The document was missing from the record, but the board dealt with the issues that were the content of the document because you brought it to the board. Well, I don't. Isn't that right? Is that, am I? They dealt with the same factual material, but I don't think that the judge viewed it in a constitutional context, and that's the distinction that I'm making. The fact, namely, whether Ms. Havens should have been serving in all those capacities, but I don't believe, I know, because the decision is silent on the Withrow v. Larkin standard, and that's, to repeat myself, it's the probability of the actual bias, and then we're going with that, Your Honor, with the Perkins memo, is in that memo, that's in evidence, it explains how the military service and supposedly this late delivery of the military orders to Ms. Havens created an environment where Havens had every reason to want to get rid of this woman who was constantly criticizing her, and apparently Havens viewed her as being absent, basically, without approval because of late delivery of military orders, and that, Your Honor, I would submit because we have military orders in there, they were issued on August 5th of 2008 and delivered that same day. That's a violation of USERRA, holding the calling up of a reservist and their absence from work resulting therefrom against them. So the record did have that in there, and the court did overlook it, and it didn't overlook it because it wasn't viewing things through the constitutional prism. We don't know that, but it's another of the several unusual items in this case that are before the court. One of the other unusual items is that when did the removal occur? It recovered days after this court issued its mandate. Is that a coincidence? I suggest not. If you look at the chart on 15, every time she went away on military leave, there was a counteraction within 14 days or less, so that, for instance, this ODP, the opportunity to demonstrate performance, which was issued after the reassignment request was denied, it had a three-month period and a 30-day extension, which all expired in January of 2009. They don't remove her then. They let eight months go by. She leaves our military service again. This Court of Appeals rules in her favor, and then they issue the removal letter. It is a striking example of unusual circumstances, and since I have a little bit more time, just to give you some of the flavor, the earlier proceedings in this case involved derogatory information in Ms. Godfrey's official personnel file that, by virtue of a settlement agreement, the agency was obligated to remove. There was a later claim that they breached that. There was a finding that they did breach it. There was a subsequent settlement agreement to again remove it. In the midst of these military leaves and the requests for reassignment, a somewhat mysterious FAA person delivers a, I'll call it a dummy copy of the file, directly to Ms. Godfrey, says, here, give this to your supervisor. Well, what's in it? That same offending material. She makes a copy for her own record because she knows there's litigation involved here. This could be useful. She gives it to her supervisor. The supervisor keeps it under lock and key, doesn't destroy it. The board's finding was, well, that's not a violation because that was not her official personnel file, but is that part of the hostile environment that this woman was working under? We submit it was. To be given items by a mysterious person who has no connection to her other than they work for the same agency, the manager, the same Havens, keeps the material. Does she look at the material too? It has offensive material that's in there that since 2003 was ordered to be removed. Does that create an animus against her? Does that create this hostile environment? Many courts have said it's the circumstantial evidence and the timeline that is essential, at least one of the ways you prove a USARA complaint. And we submit that in this case, there was abundant information and that the court below erred by not considering all the evidence and taking into account the full account, our due process argument. I didn't reserve any rebuttal time. Let me just, by way of anticipation, I've seen opposing counsel's brief that they claim we did not properly preserve the due process argument at the lower board. And I would submit, Your Honor, in fact, we did. My own letter contesting the removal, which was in the 15-day period where we had a right to contest it, neatly lays out the constitutional argument. The 2009 appeal that we filed once the removal went through, October of 2009, mentioned specifically a constitutional due process violation. The case was tried involving whether this woman should have served in all capacities. My closing argument, I specifically mention and cite verbatim from Withrow v. Larkin. Yes, the order that the judge issued five days before the hearing didn't call it a constitutional issue. He claimed that we had raised harm resulting from procedural error. I submit, Your Honors, that's a distinction without a difference and that we have certainly preserved that claim in the court below. Thank you. I'll submit our briefs. Thank you, Mr. Lipton. Ms. Hogan. Good morning, Your Honors. May it please the Court. The MSPB's decision should be affirmed because Ms. Godfrey received all process to which she was due. With respect to Ms. Haven serving as the proposing and the deciding official, as we pointed out in our brief, this Court has previously held in disarno and in other cases that that does not violate constitutional due process. But how about when you add the fact that she was the target of the complaint? I think we begin, as the Court acknowledged in disarno, that the law presumes that a supervisor is capable of changing their mind once they have the opportunity to hear the evidence presented by the employee. And we also start with the... But disarno is not a case in which the decider was a target, was it? That's correct, Your Honor. I couldn't find any case in which that particular issue came into focus. Did you have one? I'm not aware of any, Your Honor. No. But Ms. Godfrey had the opportunity at the hearing to present testimony and evidence that Ms. Havens did, in fact, exhibit a bias against her. And the administrative judge concluded that there was, quote, no evidence that Ms. Havens expressed hostility towards her due to her military service. So she did have the opportunity to present a case that Ms. Havens was biased against her, was taking these actions against her for some non-legitimate reason. And she did not meet her burden in that regard. With respect to the missing file issue, the six pages that Ms. Godfrey contends were not before the Board, as Ms. Godfrey's counsel acknowledges, all the facts supporting her constitutional argument were before the Board and were considered. And to the extent that the administrative judge did not specifically make a finding about the constitutional issue, we would submit that that's harmless error based upon this Court's decisions and DiSarno and Hanley. Ms. Godfrey here today raises arguments regarding her hostile work environment that were not specifically raised in her brief, but we would just point the Court to the findings of the Board that she had not demonstrated a hostile work environment, and we believe that finding is supported by substantial evidence. And if the Court has no further questions, we'll respectfully request that the Court affirm the Board's judgment. Thank you, Ms. Hogan.